And the final case of the day, Richards v. U.S. Steel. You may proceed, Mr. Roosevelt. Good morning, or I guess it's good afternoon now. Good afternoon, and if it may please the court, counsel, I represent Mary Richards this afternoon and we respectfully submit that Mary Richards' claim for the intentional infliction of emotional distress has not been preempted by the Illinois Human Rights Act. Illinois has established a right to policy by a tort for the intentional infliction of emotional distress that its citizens should be free of the intentional infliction of emotional distress, often that occurring in an employment setting as it does here. In Name v. McKesson, this court has stated that the proper inquiry is whether the plaintiff can prove the elements of her state law claim independent of the legal duties established by the Illinois Human Rights Act. This is not whether the facts that support the claim could also have supported a discrimination claim. That is, certain of the facts may support a discrimination claim, but that's not the test. In this instance, there are two independent duties, one being that duty under the intentional infliction of emotional distress claim, and that is the duty that is complained of here as in Name. In Name, the conduct there was found to be broader than just simply sexually harassing behavior and conduct, but included a pattern of creating an impossible work condition. Among the complaints in Name was asking her to stand on an unsteady ladder and climb it as she was pregnant, interfering and sabotaging her access to a computer, belittling her in front of other employees, and also having Ms. Name involved in work assignments which were increasing over time to the extent that she couldn't get the job done. Counsel, can I ask you whether you're arguing that Mr. Byrd's actions are actions that inflicted emotional distress and for which U.S. Steel is liable? Absolutely. Mr. Byrd was her supervisor, a supervisor for U.S. Steel in the Blast Oxygen Furnace Department, and he was authorized by U.S. Steel and was acting within the scope of his employment and his duties. But wouldn't – all those incidents are outside the statute of limitations, though, aren't they? No, they are a pattern of conduct that were pled – They're beyond the two years. No, sir, because the claim was filed originally in the U.S. District Court, as we point out in the procedural history. Then the District Court relinquished the count to which was the intentional infliction of emotional distress when it granted summary judgment. I'm trying to count from the original filing in the District Court, the first case. Right. No, I believe those instances that were complained of were timely and not outside when you go back two years as a pattern, again, a pattern of his conduct. So can you help me out on the chronology then? When was she – when exactly was she in the basic oxygen furnace? That was in 2000 – and I apologize. It's like April 2010 to January 2011, thereabouts. Okay. I will accept that because I don't have any other – Well, that's when she was an electrician. And she was in there for an extended period of time until she was discharged. So these were events that were occurring as she was in that unit. Was she discharged or did she just – Eventually she was, and we're alleging that was part of the pattern here. This is months long after she left the basic oxygen furnace. Yes. And that discharge went to arbitration, and eventually the discharge was overturned in arbitration, and she was returned with a 30-day suspension. Okay. Is she back at work at U.S. Steel now? Was until the time the plant closed temporarily. Okay. Well, suppose, just for purposes of argument, that you cannot reach back to Byrd's conduct. Then we've got, in essence, what you describe as the fairly callous response to her complaints by personnel, right? Right. And what duty do you think the personnel department breached? Absolutely the duty to avoid making statements, and the plaintiff testified that these statements were upsetting to her. Ms. Kachikian told her, look, you're just going to have to adjust to a rough work environment. She also said, I've looked at the circumstances of his ripping open your jacket, and I made the determination that that's simply his effort to look at a pocket that was sewed on the inside of your jacket. For a lady that's sitting there crying, asking for assistance, asking for understanding, that was, in Mary Richard's opinion, very insulting, very troubling. Was that the McBride incident we're talking about? No, that was Byrd. That was Byrd. Grabbed her jacket, ripped it open. But is it extreme and outrageous for the HR, the human resources personnel, to come to a different conclusion as to what she alleges happened? To make that statement in that fashion for an employee that's crying, she knew she was in a weakened emotional condition. She knew this was a pattern of conduct that had occurred at the employer's hands. She knew that this would cause, or be likely to cause, extreme upset to claim that all he was trying to look at was a pocket that you sewed on the inside of the jacket when she admits that he ripped it open and said, I like that. So the HR supervisor admitted knowing all of that other harassment? Kachikian said that she had looked at the incident and not knew of it. Also, Mary Richard had complained to Kachikian in that conference of other actions that she claimed Byrd was taking that were over in the past that had created problems for her. Then after the conversation with Kachikian, Richards calls the employer's hotline for ethical violations, asks assistance. Another HR executive, Mr. Slade, calls her in, and in that conference, he simply tells her, look, you're too emotional. You need to see a psychiatrist. And she's dispatched from the conference. She's sitting there crying, asking for assistance, and that's his response. These are two separate HR representatives with an intervening call to the company's helpline asking the company's assistance. And I believe absolutely. The fact is she's diagnosed with post-trauma stress disorder. The employer knew, and HR should reasonably have known that these actions would cause extreme emotional distress, and it did. Thank you for your time. Do you want to save the rest of your time for rebuttal? Please, if I may. All right. Ms. Kopsky. Thank you. May it please the court. Good afternoon. My name is Carolyn Kopsky. I'm here on behalf of the Appley U.S. Steel. The court below granted summary judgment on just one of our bases for bringing the motion. We had filed the motion for three reasons, a statute of limitations argument, the fact that they had not sufficiently pled an intentional infliction of emotional distress claim, and finally, the one that it was granted on, which was that the matter was preempted as a result of the Illinois Human Rights Act. This case was appropriately, we believe, the motion for summary judgment was appropriately granted on that basis because the intentional infliction of emotional distress claim is inextricably linked to the Human Rights Act. The factual allegations here are identical to those that were made by Ms. Richards in her sexual harassment claim. If I may interrupt, I understand why you used that term inextricably linked, because it's in Illinois Supreme Court cases. So, of course, we have to follow that. But luckily, the Illinois Supreme Court has more concretely defined that as just simply with these facts standing alone, state a claim or allow the plaintiff to prove it if it went to trial that there is some independent common law tort, like intentional infliction of emotional distress. So the fact that the factual allegations overlap with sexual harassment is not really part of the test, right? Well, I think you do have to look at that, the fact that they're all one and the same. But in addition, I would agree that you have to look at the duty and where the duty to not do something comes from. And in this case, the duty of the employer, United Steel, to refrain from discrimination or harassment based on sex comes exclusively from the Illinois Human Rights Act. So, therefore, I believe that they are inextricably linked and that the court below correctly ruled that the case was preempted. Well, there may be some duties, I think that's right, that emanate from Title VII, like an employer's duty to investigate an allegation that a co-worker or a supervisor engaged in harassment. But if you just look at the allegations of these supervisors like Byrd, which there may be a limitations problem with that. That's true. But it seemed like the district court said, well, I can decide this because without looking to whether or not those allegations amount to extreme and outrageous conduct and, therefore, would state an emotional distress claim. But that is the test, right? Yes, that's correct. But in this case, the allegations with respect to the intentional affliction, there were basically three bases upon which Ms. Richards claimed that there was intentional affliction of emotional distress. And two of those related to comments made by the labor relations personnel during these meetings and one related to an incident involving a Mr. McBride where he ripped a radio off of the plaintiff's chest in order to make a call. Those incidents, those are not sufficient. I would note that at the time that both of those statements were made by the labor personnel, Ms. Richards was already out of the BOF department, which is where she claimed that all of the sexual harassment took place. So at that time, she was away from the person, Mr. Bird, who she claims that she had the problem with. In fact, in her brief at page 16, she admits that her difficulties began when she moved to the all-male environment in the basic oxygen furnace department where she was the only female. She said from day one she was regarded differently. At the time that both Mr. Tate and Ms. Kejian made their statements, she was no longer there in that department around Mr. Bird. After those meetings, the labor people met with Mr. Bird, talked about the issues, what he needed to do to not have problems in the future, and told him he should just stay away from her. She wasn't in the department anymore. She should be left alone. So the idea that they did nothing is just simply not correct. What duty does the employer have to a complaining employee under these circumstances, independent of the statutory duty? I think the duty comes from the Illinois Human Rights Act. I don't think there is any other duty to say you can't make these types of statements. Has Illinois recognized a common law claim for something? In Indiana, there's some new litigation involving claims for bullying on the job. Has Illinois recognized such a claim? Not that I'm aware of. That would probably be treated as an emotional distress claim. Not that I'm aware of. If you look at those statements alone, the fact that she's crying and someone says you probably need to get counseling or see a psychiatrist, I don't see that that is extreme and outrageous conduct. Let me ask you this. Is it your position we shouldn't consider any of the allegations that are connected to Ms. Richards' claims of sexual harassment when we consider whether she has established a claim of intentional infliction of emotional distress? I think that she's only alleged three. I'm not sure I got your question. The question is can it be considered, the sexual harassment testimony? Can it be considered under the claim of intentional infliction of emotional distress as background information, as setting the stage, as providing some history in terms of the relationship? In this case, the only defendant in the case is U.S. Steele. So if Byrd were in the case, that might be a different situation. I think it would be a different situation. In this case, U.S. Steele received a complaint from Ms. Richards after she was gone from the BOF department. She filed her civil rights complaint in January. So are you saying those incidents could never be relevant to her IIEH claim? I think if she had a claim against Mr. Byrd, and I think if those incidents were done in the course of, if those things happened, Mr. Byrd did those things in the course of his employment with U.S. Steele, and U.S. Steele was aware of them and condoned them, then I think so. But in this case, the complaint to U.S. Steele, the civil rights complaint regarding Mr. Byrd and those particular incidents, and particularly the jacket incident, came after she was out of that department. I would assume that if there is a viable IIED claim here, it would be impossible to try it without providing some of that background. But I thought it was pretty well established in Illinois that under state law, the employer is not strictly liable for torts that are equivalent to sexual harassment. Intentional mistreatment of subordinates. That's correct, Your Honor. There would have to be some sort of knowledge, condonement of the action, and there just wasn't here. In fact, the complaint was filed after she was out of the BOF department. They met with her. They talked to her about it. They counseled her. It may have been taken wrong, but it wasn't egregious conduct on their part what they said. Well, I assume U.S. Steele would contend that labor relations personnel are not acting tortuously if they challenge a complaint, for example, is false, or test the credibility of it. That's correct. I mean, that's an adversarial relationship, in essence, to begin with, right? Yes, exactly. All right. Thank you, counsel. Thank you. How much time does he have left? You have two minutes. Mr. Roosevelt. Yes. Thank you. And the tort of intentional infliction of emotional distress does apply to employers simply because of the potential for the abuse of the position the employer enjoys. What case law supports that? Davis case, that's an Illinois Supreme Court case, talks about the abuse of position. Graham case, which is, again, cited, the imbalance of power in the relationship is one which has led the courts to look in the employment situation because of that imbalance of power that exists. And how does that fit in with the question of responding at superior liability in the sexual harassment context? In this instance, we're talking, again, about the intentional infliction of emotional distress, and simply this gentleman was acting as a supervisor hired by U.S. Steele. He was acting within the scope of his employment. His actions, although serving the master, may have deviated in part against their policy but clearly was within the scope of his authority, and he was conducting the actions pursuant to U.S. Steele. I think my time is up. You have one minute. Well, let me tell you also that the threat of the job loss is particularly coercive. In Pavilon, as that case, it's going to make it very difficult, for instance, for this lady who feared for her job. We've described in detail the prior acts with Byrd where he, in fact, has threatened her employment in a setting with other coworkers. Their pattern of conduct here, this doesn't arise just in an antiseptic meeting with HR representatives. If she comes complaining of these acts, a series of acts, carefully asking for assistance, have an HR representative say, you're just going to have to adjust to a rough environment, and this wasn't about ripping open a jacket. He was just wanting to see a patch in your pocket. All right. All right. Thank you. Thanks so much for your time. Thanks to both Counsel and Caselby.